UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOHN STONEWALL,<br><br>        Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>        Defendant. | No. CV-09-3004-JPH<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross-motions for summary judgment noted for hearing without oral argument on October 16, 2009. (Ct. Rec. 21, 23). Attorney D. James Tree represents Plaintiff; Special Assistant United States Attorney David R. Johnson represents the Commissioner of Social Security ("Commissioner"). Plaintiff filed a reply brief on September 28, 2009. (Ct. Rec. 25.) The parties have consented to proceed before a magistrate judge. (Ct. Rec. 8.) After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 23) and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 21).

**JURISDICTION**

Plaintiff protectively filed an application for disability insurance benefits (DIB) on April 11, 2005, alleging disability due to monocular vision with loss of depth perception, dizziness,

ORDER GRANTING DEFENDANT'S
FOR SUMMARY JUDGMENT                                                    - 1 -

nausea, loss of balance, night blindness, fatigue, headaches, diabetes, hypertension, obesity, depression, and anxiety-related problems. (Tr. 61-63,73,100.) The application alleges onset as of April 3, 2002. (Tr. 61-63.) The application was denied initially and on reconsideration. (Tr. 44-46,49-50.)

At a hearing before Administrative Law Judge (ALJ) Riley Atkins on May 14, 2008, plaintiff, represented by counsel, and vocational expert Kathryn Heatherly testified. (Tr. 332-344.) On May 22, 2008, the ALJ issued an unfavorable decision. (Tr. 16-28.) The Appeals Council denied Mr. Stonewall's request for review on November 25, 2008. (Tr. 5-7.) Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on January 6, 2009. (Ct. Rec. 1, 4.)

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both plaintiff and the Commissioner, and are briefly summarized here.

Plaintiff was 51 years old at the time of the hearing. (Tr. 334.) He went to the ninth grade and earned a GED. Plaintiff has special training in first aid, equipment operation, and traffic flagging. (Tr. 106, 334.) He has past relevant work as a truck driver and road laborer. (Tr. 341.) Plaintiff has problems controlling his blood sugar, and with both of his eyes, but the right eye is worse. (Tr. 334-335.) He lives on five acres. He is able to mow his lawn but, when his blood sugar drops, he is unable to do anything the rest of the day. (Tr. 335, 337.) Plaintiff has

1 no depth perception for walking and experiences dizzy spells.
2 While mowing he tends to trip going over rough ground. (Tr. 336-
3 338.) Walking or reading or "anything" causes dizziness "like car
4 sickness" – a problem that began in about 2005. (Tr. 336.) When he
5 experiences these spells, plaintiff lays down until the feeling
6 passes, usually  2-3 hours. (Tr. 336.) Plaintiff has had no
7 treatment for it. He told "the doctor I get it once in a while and
8 they, I just go lay down to get everything straightened out and
9 then get back up." (Tr. 337.)
10     Plaintiff has a driver's license and drives eight miles into
11 town (Goldendale) from his home, but does not feel safe doing it
12 because of his vision problems. (Tr. 340.) He has poor
13 concentration and dislikes crowds. (Tr. 338.) Plaintiff visits at
14 his brother's house, hunts elk with his father-in-law, plays with
15 his dogs, tinkers occasionally in his garage and tries to do the
16 dishes and some housecleaning. (Tr. 338-340.) He lives with his
17 spouse who works full time and their ten year old son. (Tr. 337,
18 339.)

## SEQUENTIAL EVALUATION PROCESS

20    The Social Security Act (the "Act") defines "disability"
21 as the "inability to engage in any substantial gainful activity by
22 reason of any medically determinable physical or mental impairment
23 which can be expected to result in death or which has lasted or
24 can be expected to last for a continuous period of not less than
25 twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The
26 Act also provides that a Plaintiff shall be determined to be under
27 a disability only if any impairments are of such severity that a
28 plaintiff is not only unable to do previous work but cannot,

considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920.  Step one determines if the person is engaged in substantial gainful activities.  If so, benefits are denied.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If not, the decision maker proceeds to step two, which determines whether plaintiff has a medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past.  If a plaintiff

is able to perform previous work, that Plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity ("RFC") assessment is considered. If plaintiff cannot perform this work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a physical or mental impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is

not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner.  *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence.  *Richardson,* 402 U.S. at 400.  If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097;  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).  Thus, if there is substantial evidence to support the administrative findings, or if there is

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 6 -

conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**ALJ'S FINDINGS**

At the outset, the ALJ found plaintiff met the DIB requirements and was insured through December 31, 2007. (Tr. 18.) At step one the ALJ found plaintiff has not engaged in substantial gainful activity. (Tr. 18.) At steps two and three, the ALJ found that plaintiff suffers from diabetes, right eye blindness, obesity, hypertension, and an adjustment disorder, impairments that are severe but which do not alone or in combination meet or medically equal a Listing impairment. (Tr. 18-21.) The ALJ found plaintiff less than completely credible. (Tr. 23-24.) At step four, relying on the VE, the ALJ found plaintiff's RFC for a range of medium work prevents him from performing his past relevant work. (Tr. 26.) At step five, again relying on the VE, the ALJ found plaintiff can perform other work, such as motel cleaner, custodian, and hand packager. (Tr. 26-27.) Accordingly, the ALJ found that plaintiff is not disabled as defined by the Social Security Act. (Tr. 28.)

**ISSUES**

Plaintiff contends the Commissioner erred as a matter of law by failing to (1) properly weigh the medical evidence, specifically the opinion of treating PAC David Tuning, and (2) properly assess credibility. (Ct. Rec. 22 at 14-20, Ct. Rec. 25 at 1-11.) The Commissioner responds that the ALJ's decision [undisputedly limited to the relevant DIB period of April 1, 2004

through December 31, 2007] is supported by substantial evidence and free of legal error, and should therefore be affirmed. (Ct. Rec. 24 at 7, 17.)

**DISCUSSION**

**A. Weighing medical evidence**

In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929. Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of symptoms. *Bunnell v. Sullivan*, 947, F. 2d 341, 345 (9th Cr. 1991).

A treating physician's opinion is given special weight because of familiarity with the claimant and the claimant's physical condition. *Fair v. Bowen*, 885 F. 2d 597, 604-05 (9th Cir. 1989). However, the treating physician's opinion is not "necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989) (citations omitted). More weight is given to a treating physician than an examining physician. *Lester v. Cater*, 81 F.3d 821, 830 (9th Cir. 1996). Correspondingly, more weight is given to the opinions of treating and examining physicians than to nonexamining physicians. *Benecke v. Barnhart*, 379 F. 3d 587, 592 (9th Cir. 2004). If the treating or examining

physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F. 3d at 830. If contradicted, the ALJ may reject an opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F. 3d 1435, 1463 (9th Cir. 1995).

In addition to the testimony of a nonexamining medical advisor, the ALJ must have other evidence to support a decision to reject the opinion of a treating physician, such as laboratory test results, contrary reports from examining physicians, and testimony from the claimant that was inconsistent with the treating physician's opinion. *Magallanes v. Bowen*, 881 F.2d 747, 751-52 (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d 1042-43 (9th Cir. 1995).

Acceptable medical sources, as defined by the applicable regulations, do not include physician's assistants. See C.F.R. 404.1527(a)(2); SSR 06-03p. Opinions from other medical sources [such as PA's] are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence. SSR 06-03p. In some situations it may be even appropriate to give more weight to a medical source opinion from a non-"acceptable medical source" than to the opinion of a treating "acceptable medical source." Such a situation might arise if the non-acceptable source has seen the person more often than the treating source and has provided better supporting evidence and a better explanation of his or her opinion. *See* SSR 06-03p.

Testimony by a lay witness provides an important source of

information about a claimant's impairments. An ALJ can reject it only by giving specific reasons germane to each witness. *Smolen v. Chater*, 80 F.3d 1273, 1288-1289 (9th Cir. 1996).

*Opinion of David Tuning, PAC*

Plaintiff initially argues error at step five. (Ct. Rec. 22 at 11, 14-15.) His essential argument, however, is that the ALJ failed to properly reject the opinion of David Tuning, PAC. (Ct. Rec. 22 at 15-18.) Plaintiff appears to agree the ALJ was required, at a minumum, to provide specific reasons germane to Mr. Tuning for rejecting his opinion. According to plaintiff, since there is no evidence undermining Mr. Tuning's "statements regarding Mr. Stonewall's vertigo and nausea," these statements should be credited as true. (Ct. Rec. 22 at 18.)

Both arguments are unsupported by the record.

Plaintiff's argument fails. The ALJ gave specific reasons supported by substantial evidence for rejecting Mr. Tuning's opinions. In addition, other evidence, including some of Mr. Tuning's records, undermine Mr. Tuning's opinions with respect to nausea and vertigo.

It is undisputed plaintiff has a long history of right eye problems, including branch vein occlusions resulting in clinically significant macular edema and scatter laser treatment in the 1990's. (Ct. Rec. 18, 252.) The ALJ notes treating opthamologist John D. Willer, D.O., opined in October of 2002 plaintiff is legally blind in his right eye. (Tr. 19, referring to Exhibit 3F.) After a consultative opthamologic examination by Daniel J. Kelly, M.D., in August of 2005, Dr. Kelly confirmed plaintiff's right eye vision deficit and noted bilateral mild background

ORDER GRANTING DEFENDANT'S MOTION  
FOR SUMMARY JUDGMENT                                           - 10 -

diabetic retinopathy without diabetic macular edema. (Tr. 19, referring to Exhibit 9F.) Vision in plaintiff's left eye is correctable to 20/40. (Tr. 107, 198.)

Plaintiff alleges the ALJ should have found he suffers from impaired attention and concentration, deficits caused by right eye blindness. He contends evidence of eye fatigue, vertigo and nausea support his alleged limitations in concentration and attention. (Ct. Rec. 22 at 14-15, Ct. Rec. 25 at 2-4.)

A partial overview of Mr. Tuning's relevant records related to plaintiff's eye fatigue and resulting symptoms includes:

4/11/02:   needs to find other work activities besides driving. He is aware of this and accepts this. (Tr. 271)

5/17/02:   can't drive "though is able to do other work activity." (Tr. 284)

6/7/02:    gets motion sick with travel even riding in car; of course has lost his depth perception with his monocular vision. He is unable to work. (Tr. 273)

1/31/03:   headaches seem to have subsided since he is not out-straining the eye as much or his other eye has adjusted. (Tr. 268)

8/20/05:   motion sickness secondary to monocular vision; nausea. Of course unemployable. (Tr. 256.)

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                              - 11 -

    10/17/07: no headaches and generally is feeling well
            (Tr. 301)

    1/16/08:  headaches secondary to vision loss; dizziness (Tr.
            298)

    Significantly, plaintiff fails to even mention in either his opening or reply brief Mr. Tuning's January of 2003 [before the relevant period began on April 1, 2004] record indicating plaintiff's headaches due to eye strain seem to have subsided (Tr. 268), even thought the ALJ relied on it as one of the reasons to reject more severe limitations assessed by Mr. Tuning and the Commissioner pointed it out in his brief.

    The ALJ rejected some of Mr. Tuning's opinions for a variety of reasons, only some of which are included for review purposes. The ALJ notes Mr. Tuning's opinions of plaintiff's ability to work are internally inconsistent and contradicted by other evidence. (Tr. 25.) As can be seen in the records referenced above, Mr. Tuning opined on May 17, 2002, plaintiff could do work other than driving (Tr. 284). Less than a month later he opined plaintiff was unable to work (Tr. 273). There is nothing in the record indicating plaintiff's condition worsened between May 17, 2002 and June 7, 2002 to support Mr. Tuning's changed assessment.

    With respect to internal inconsistencies, the ALJ made one error. He incorrectly attributes the February of 2002 RFC for light work to Mr. Tuning (Tr. 25, referring to Tr. 272); and notes the RFC is inconsistent with Mr. Tuning's opinions in April, May and June of 2002 that plaintiff was unable to work because he

could not drive at his job. (Tr. 25, referring to Tr. 271, 273, 283-284.) To the extent the ALJ relied on this specific contradiction to reject Mr. Tuning's assessment, he erred. In light of the record as a whole, though, the Court finds the error is harmless.

The ALJ rejected Mr. Tuning's opinions as undermined by other evidence of record, in addition to their internal inconsistencies. (Tr. 25.) The ALJ notes the record does not contain any opinions from other treating or examining physicians indicating plaintiff is disabled or even has limitations greater than those in the RFC assessed by the ALJ. (Tr. 25.) The ALJ points out examining psychologist Lawrence J. Lyon, Ph.D., assessed a Global Assessment of Functioning (GAF) of 58, indicating a moderate level of impairment in social or occupational functioning. (Tr. 25, referring to Exhibit 8F.) Office visit notes reflect "numerous periods of time during which the claimant did not specify any particular complaint and relatively infrequent trips to the doctor for allegedly disabling symptoms." (Tr. 23.)

The ALJ is correct. Plaintiff's medical history reveals he generally saw Mr. Tuning every three months for diabetes follow up. Other treatment and complaints have been inconsistent with allegedly disabling vertigo, dizziness and nausea: **(a)** able to do light work (2/28/02 at Tr. 272, Derek Earl, D.O.); **(b)** okay to drive despite complaints of motion sickness while driving (4/4/02 at Tr. 200-201, Cascade Eye Center); **(c)** needs to find other work (4/11/02 at Tr. 271, Tuning); **(d)** plaintiff reports increased pain when exercising (5/13/02 at Tr. 273, Tuning); **(e)** can do work other than driving (5/17/02 at Tr. 284, Tuning); **(f)** gets motion

sickness riding in car (6/7/02 at Tr. 273, Tuning); **(g)** cannot do work of any kind and "of course is unable to drive" (6/17/02 at Tr. 286, Tuning); **(h)** doing pretty well, planning elk hunting (10/25/02 at Tr. 269, Tuning); **(i)** headaches subsided since not over straining eye and/or other eye has adjusted (1/31/03 at Tr. 268, Tuning); **(j)** ER - influenza (3/21/03 at Tr. 232); **(k)** diabetes follow up: "feeling pretty good" (3/3/04 at Tr. 264, Tuning); **(l)** diabetes uncontrolled (6/4/04 at Tr. 263, Tuning); **(m)** complains of difficulty with depth perception; driving; needs "disability papers completed (6/28/04 at Tr. 241, Cascade Eye Center); **(n)** blood sugar uncontrolled (8/18/04 at Tr. 262, Tuning); **(o)** blood sugar improved, review in 1 month (8/30/04 at Tr. 261, Tuning); **(p)** blood sugar improved, review in 1 month (10/8/04 at Tr. 260, Tuning); **(q)** sub-optimal diabetes control (11/7/04 at Tr. 257, Tuning); **(r)** review blood sugar log in 3 months (1/17/05 at Tr. 257, Tuning); **(s)** motion sickness and nausea; return in 3 months (8/12/05 at Tr. 256, Tuning); **(t)** still has vision problems (10/18/06 at Tr. 309, Tuning); **(u)** changed alternator in wife's car (3/1/07 at Tr. 307, Tuning); **(v)** reports past eye exam normal (6/5/07 at Tr. 306, Nawang Sherpa, M.D.); **(w)** diabetes uncontrolled (6/13/07 at Tr. 305, Tuning); **(x)** chronic back pain; return in 3 months ((8/7/07 at Tr. 303, Tuning); **(y)** no headaches, uncontrolled diabetes (10/17/07 at Tr. 301, Tuning); and **(z)** headaches secondary to vision problems, no driver's license; needs to lie down 2 hours a day (1/16/08 at Tr. 298-299, Tuning).

In addition to plaintiff's ER visit for influenza in 2003 noted above, he was seen in the ER for bronchitis in May of 2006

(Tr. 310) and in December of 2006 and June of 2007 for acute sinusitis. (Tr. 319, 329.) At the hearing plaintiff testified he "told the doctor [he] gets it [dizziness] once in a while." (Tr. 337.)

The ALJ is correct that Mr. Tuning's opinions are not supported by the medical records.

To further aid in weighing the conflicting medical evidence, the ALJ evaluated plaintiff's credibility and found him less than fully credible. (Tr. 23-24.) Credibility determinations bear on evaluations of medical evidence when an ALJ is presented with conflicting medical opinions or inconsistency between a claimant's subjective complaints and diagnosed condition. *See Webb v. Barnhart*, 433 F. 3d 683, 688 (9th Cir. 2005).

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F. 3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F. 2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F. 3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F. 3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F. 3d at 834; *Dodrill v. Shalala*, 12 F. 3d 915, 918 (9th Cir. 1993).

Three of the factors the ALJ relied on when he assessed credibility include: 1) activity levels incompatible with the degree of impairment alleged; 2) a lack of treatment and other evidence related to claimed severe vertigo, dizziness and nausea; and 3) plaintiff's inconsistent statements. (Tr. 22-25.)

The record supports the ALJ's reasons.

During the relevant period of April 1, 2004 through December 31, 2007, plaintiff's activities have included driving (6/28/04 at Tr. 241), hunting and camping once or twice a year (5/3/05 at Tr. 132), starting a fire every morning, feeding the dogs, meeting his son at the bus stop and giving him a snack daily after school, as well as tinkering in the shop and trying to "get the garden going" (5/20/05 at Tr. 250), driving in May of 2005 (Tr. 131), fixing an alternator in March of 2007 (Tr. 307), and continuing to hunt elk in 2008 (Tr. 339-340)(Tr. 22-24.)

The lack of medical treatment for allegedly severe dizziness has been discussed above in the context of the ALJ's reason for rejecting Mr. Tuning's opinions.

Plaintiff's descriptions of his abilities have been inconsistent, as the ALJ correctly observes. (Tr. 22-24.) The ALJ notes on October 30, 2002, plaintiff reported he could walk for one hour, sit 2 hours, and stand 30 minutes before needing to rest up to 2 hours, sometimes as much as 2-3 times each day.  He could occasionally lift 20 pounds but could not do household chores or yard work due to dizziness. (Tr. 23, citing Exhibit 5E; Tr. 94-96.)  The ALJ observes five days before he completed the questionnaire at Exhibit 5E, on October 25, 2002, plaintiff reported he planned to go elk hunting and is described as doing

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                                    - 16 -

pretty well. (Tr. 23, referring to Exhibit 10F at Tr. 269.) The ALJ further observes, despite plaintiff's description of limited abilities in 2002, in May of 2005, he reported considerably more activities of daily living. (Tr. 23, citing Exhibit 10E.) On May 3, 2005, plaintiff reported he goes to his neighbor's for coffee on a good day, then sits or walks outside. In the afternoon, he goes to meet his son at the bus stop after school and makes him a snack. He reported driving and hunting and camping 1-2 times a year. (Tr. 23, referring to Tr. 128.) The ALJ points out later that month, on May 20, 2005, plaintiff told Dr. Lyon he starts the fire in his home every morning, wanders around his five acres, tinkers in his shop and tries to get the garden going. (Tr. 23, referring to Tr. 250.)

   The ALJ properly relied on plaintiff's activities, which are inconsistent with claimed severe impairments of nausea and dizziness, on the lack of evidence of dizziness and nausea, including infrequent treatment and complaints, and on plaintiff's inconsistent statements when he found plaintiff less than completely credible.  (Tr. 22-24.)

    The ALJ's reasons for finding plaintiff less than fully credible are clear, convincing, and fully supported by the record. *See Thomas v. Barnhart*, 278 F. 3d 947, 958-959 (9th Cir. 2002)(proper factors include inconsistencies in plaintiff's statements, inconsistencies between statements and conduct, and extent of daily activities).  Noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment also cast doubt on a claimant's subjective complaints.  20 C.F.R. §§ 404.1530, 426.930; *Fair v. Bowen*, 885 F.

2d 597, 603 (9th Cir. 1989).

The ALJ's reasons for rejecting some of Mr. Tuning's opinions are specific, germane to Tuning's opinions, and supported by the record. The ALJ observes Mr. Tuning appeared to rely quite heavily on plaintiff's subjective reports of his symptoms and limitations. (Tr. 25.) As previously indicated, Mr. Tuning's opinions are internally contradictory and inconsistent with the rest of the evidence, including plaintiff's activities. (Tr. 25.)

These are specific reasons, germane to Mr. Tuning's opinion, for the ALJ to reject Mr. Tuning's assessed limitation of the need to lie down daily due to dizziness. *See Bayliss v. Barnhart*, 427 F.3d 1211,1216 (9th Cir. 2005).

The ALJ's assessment of Mr. Tuning's opinion and plaintiff's credibility are fully supported, but the Court notes one error, italicized below:

"[In October of 2002 plaintiff] alleged he was unable to perform handling/fingering motions, *even though he has alleged no impairment that would reasonably affect this ability.*" (Tr. 23, referring to Tr. 95.)

In the Court's view, plaintiff's vision impairment, particularly before his eyes adjusted, is one that could reasonably affect plaintiff's handling/fingering abilities. However, the Court finds the error harmless for several reasons. Plaintiff testified that after onset, he applied for jobs in logging and farming, indicating he believed he was able to perform handling/fingering sufficiently to perform these jobs. (Tr. 334.) And, activities of lighting a daily fire belie any severe impairment in the these areas. (Tr. 250.)

1   A mistake that is "nonprejudicial to the claimant or
2 irrelevant to the ALJ's ultimate disability conclusion" is
3 harmless error. *Stout v. Comm'r. Soc. Sec.* Admin., 454 F.3d
4 1050,1052 (9th Cir. 2006). In the Court's view, the ALJ's
5 erroneous statement is irrelevant to the ultimate disability
6 conclusion and is, therefore, harmless.

7   The ALJ is responsible for reviewing the evidence and
8 resolving conflicts or ambiguities in testimony. *Magallanes v.*
9 *Bowen*, 881 F. 2d 747, 751 (9th Cir. 1989). It is the role of the
10 trier of fact, not this court, to resolve conflicts in evidence.
11 *Richardson*, 402 U.S. at 400. The court has a limited role in
12 determining whether the ALJ's decision is supported by substantial
13 evidence and may not substitute its own judgment for that of the
14 ALJ, even if it might justifiably have reached a different result
15 upon de novo review. 42 U.S.C. § 405 (g).

16   The ALJ observes plaintiff testified a company with whom he
17 had disability insurance ended his benefits after 2 years, finding
18 him eligible for some kind of work. (Tr. 23, referring to Tr.
19 339.) In 2005, the ALJ notes, plaintiff was told he could go to
20 work in Vancouver [presumably Washington] but he did not want to
21 relocate. (Tr. 24, referring to Tr. 249.) And, plaintiff
22 testified he still has a driver's license. (Tr. 340.)

23   With respect to attention and concentration for extended
24 periods, the ALJ assessed a moderate limitation. (Tr. 21.) He
25 included it in the hypothetical to the VE. (Tr. 343.) Plaintiff
26 contends a marked limitation should have been assessed, and
27 asserts complaints of disabling dizziness, nausea and vertigo
28 support a marked limitation in this area. (Ct. Rec. 22 at 14-15;

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                                  - 19 -

1  Ct. Rec. 25 at 2-3.)

There is no evidence plaintiff has been disabled by dizziness, vertigo or nausea for the requisite twelve month period, beyond his own unreliable self-report and Mr. Tuning's contradictory opinions. Other than Mr. Tuning, no treatment provider has opined plaintiff is disabled or unable to perform medium work.

The record does not support a marked limitation in attention and concentration.  The ALJ's assessed RFC is fully supported by the record and without error.

After review the Court finds the ALJ's assessment of all of the evidence is supported by the record and free of legal error.

**CONCLUSION**

Having reviewed the record and the ALJ's conclusions, this court finds that the ALJ's decision is free of legal error and supported by substantial evidence..

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment **(Ct. Rec. 23)** is **GRANTED.**

2. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 21)** is **DENIED.**

The District Court Executive is directed to file this Order, provide copies to counsel for Plaintiff and Defendant, enter judgment in favor of Defendant, and **CLOSE** this file.

DATED this 17th day of November, 2009.


                                    s/ James P. Hutton
                                    JAMES P. HUTTON
                              UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                                          - 20 -